UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ROBERT ALAN FRASCARELLI | : | |
| --- | --- | --- |
| Petitioner, | : | CIVIL ACTION NO. |
| | : | 3:17-CV-1486 (JCH) |
| v. | : | |
| | : | |
| D. K. WILLIAMS, | : | NOVEMBER 16, 2018 |
| Respondent. | : | |

**RULING RE: PETITION FOR WRIT OF HABEAS CORPUS (DOC. NO. 1)**

The petitioner, Robert Alan Frascarelli ("Frascarelli"), is incarcerated at the Federal Correctional Institution in Danbury Connecticut ("FCI Danbury"). Frascarelli is currently serving the remainder of a sentence imposed in Mexico, pursuant to a prisoner transfer treaty between the United States and Mexico. Pursuant to section 2241 of title 28 of the United States Code, he filed a Petition for a Writ of Habeas Corpus, challenging the computation of his final release date by the Federal Bureau of Prisons ("BOP"). See generally, Petition for Writ of Habeas Corpus ("Petition") (Doc. No. 1). Frascarelli claims that the BOP incorrectly denied him credit on his sentence for 1544 foreign labor days worked in Mexico. Id. at 10. For the reasons that follow, Frascarelli's Petition is denied.

**I.   PROCEDURAL BACKGROUND**

   A.   <u>Mexican Judgment and Calculation of Transfer Treaty Sentence</u>

Frascarelli was sentenced, in the First Penal Court in Tijuana, Baja California, Mexico, to a term of imprisonment of 27 years and six months, after being found guilty of "Qualified Homicide Committed with Advantage." See id. The parties' filings reflect a

1

potential dispute as to the date of Frascarelli's sentencing.  Frascarelli stated in his Petition, that he was sentenced on August 23, 2010.  See Petition at 10.  Respondent, D. K. Williams ("Williams"), Warden of FCI Danbury, stated in her Response to this court's Order to Show Cause, that Frascarelli was sentenced on November 6, 2012.  See Respondent's Response to Order to Show Cause ("Resp't Resp.") (Doc. No. 7) at 1.  Frascarelli submitted a certified English translation of the judgment and sentence of the Mexican court as Exhibit 1 to his Reply to the Respondent's Response.  See Petitioner's Reply to Order to Show Cause in Support of Petition for Habeas Corpus ("Pet'r Reply") (Doc. No. 10), Ex. 1.  The translation makes clear that Frascarelli was originally sentenced on August 23, 2010, but that an appellate court annulled the judgment and sentence and remanded the case.  See id. at 1.  On remand, on November 6, 2012, the First Penal Court, Tijuana, found Frascarelli guilty and sentenced him, inter alia, to a term of imprisonment of 27 years and six months.  See id. at 1, 8.  The court concludes that Frascarelli was sentenced on November 6, 2012.

On January 9, 2014, Frascarelli applied for a transfer to the United States to serve the remainder of his sentence, pursuant to the United States-Mexico Treaty on the Execution of Penal Sentences.  Resp't Resp. at 2; see generally, Treaty on the Execution of Penal Sentences, Mex.-U.S., Nov. 25, 1976, T.I.A.S. No. 8718 ("Transfer Treaty").

Frascarelli was transferred from Mexico to the United States on March 24, 2014.  See id.  Following Frascarelli's transfer to the United States, the United States Parole Commission ("USPC") determined Frascarelli's initial release date under the

most similar offense under the laws of the United States, pursuant to section 4106A of title 18 of the United States Code. See 18 U.S.C. § 4106A(b)(1)(a). The USPC determined that the most analogous federal offense was second-degree murder, under section 1111(b) of title 18 of the United States Code. See Frascarelli v. United States Parole Comm'n, 857 F.3d 701, 703–04 (5th Cir.), cert. denied sub nom. Frascarelli v. U.S. Parole Comm'n, 138 S. Ct. 341 (2017). The USPC set Frascarelli's release date after 238 months of service. See Petition at 10. The Fifth Circuit affirmed the USPC's determination on May 23, 2017, see Frascarelli, 857 F.3d at 708, and the Supreme Court denied Frascarelli's Petition for a Writ of Certiorari, Frascarelli v. U.S. Parole Comm'n, 138 S. Ct. 341 (2017).

Following the USPC's determination of an initial release date, the BOP prepared a sentence computation for Frascarelli, pursuant to section 4105 of title 18 of the United States Code. See Resp't Resp. at 3. The BOP computed a release date of March 3, 2027. See id., Attach. 6 (Sentence Monitoring Computation Data) (Doc. No. 7-7), at 3. Frascarelli was given credit on his sentence for prior incarceration and Good Conduct Time, but he was not given credit on his sentence for labor hours. See id.

    B.    <u>Exhaustion of Administrative Remedies and Petition for Habeas Corpus</u>

Following BOP's sentence computation, Frascarelli filed a Request for Administrative Remedy, directed to Williams in her role as Warden of FCI Danbury, requesting "credit for foreign labor credits accrued while incarcerated in [Mexico] from Nov[ember] 30[,] 2009 to March 15[,] 2014." See Resp't Resp., Attach. 8 (Doc. No. 7-9), at 2. Frascarelli sought "a total of 1544 labor credits." Id. Williams denied

Frascarelli's request. Williams cited to Program Statement 5880.28, the Sentence Computation Manual (CCA of 1984), which provides, in pertinent part, that computations of sentences pursuant to foreign transfer treaties are governed by sections 4105 and 4106(A) of title 18 of the United States Code. See Resp't Resp., Attach. 9 (Program Statement 5880.28) (Doc. No. 7-10), at 4. Section 4105(c)(1) provides that, "[t]he transferred offender shall be entitled to all credits for good time, for labor, or any other credit toward the service of the sentence, which had been given by the transferring country for time served as of the time of the transfer." 18 U.S.C. § 4105(c)(1). Williams noted in the denial letter, that BOP's Designation and Sentence Computation Center ("DSCC") had reviewed the documentation submitted by Frascarelli and by the Mexican government in relation to Frascarelli's transfer to the United States. See Resp't Resp., Attach. 9, at 3. The DSCC determined Frascarelli was "not entitled to credits for labor . . . as [the labor credits] were not given by the transferring country . . . at the time of [Frascarelli's] transfer to the United States." Id. at 3–4. Frascarelli's appeal to the BOP Regional Director, on April 3, 2017, and appeal to BOP's Central Office, on May 22, 2017, were denied on the same grounds. Id. at 7, 10–11.

On September 5, 2017, following denial of his administrative remedy requests, Frascarelli filed the pro se Petition for a Writ of Habeas Corpus now before this court, pursuant to section 2241 of title 28 of the United States Code. See generally, Petition. Frascarelli claims that the BOP's denial of labor credit violated (1) the Transfer Treaty; (2) section 4105(c) of Title 18 of the United States Code; (3) BOP Policy Statement

4

5880.28; and (4) the USPC Treaty Transfer Determination Order. See id. at 6–8. Frascarelli seeks 772 days of Good Time Credit in relief. Id. at 8.

## II.   DISCUSSION

### A.   Jurisdiction

Section 2241 of title 28 of the United States Code extends jurisdiction to district courts to grant writs of habeas corpus. 28 U.S.C. § 2241(a). A petition for a writ of habeas corpus pursuant to section 2241 is the appropriate means for a prisoner to challenge the execution of his sentence, including calculations by the Bureau of Prisons of the credit to be given for other periods of detention. See Poindexter v. Nash, 333 F.3d 372, 377 (2d Cir.2003). The court, therefore, has jurisdiction to rule on Frascarelli's Petition.

As Williams noted in her Response, there is "some disagreement in authority" as to whether the calculation of a final release date in a treaty transfer case is the responsibility of the USPC or the BOP. See Resp. at 6 n.4. The Second Circuit has not reached the question, and the circuit courts that have decided the issue have reached different conclusions. The Fifth Circuit views the calculation of a final release date, including determination and application of foreign and domestic credits on the sentence, as the responsibility of the USPC. See Cannon v. U.S. Dep't of Justice, U.S. Parole Comm'n, 973 F.2d 1190, 1194–95 (5th Cir. 1992) (holding that section 4105 "does not delegate the determination of the release date to the Bureau of Prisons," and that the statutory scheme "requires the [USPC] to make a timely, mandatory release date determination") (emphasis in original)). However, the majority of circuit courts to reach

5

this question have held that the final release date calculation is the responsibility of BOP. See Buitron v. Holder, No. 13-CV-00974-DRH, 2013 WL 5835462, at *3 (S.D. Ill. Oct. 30, 2013) ("The Fourth, Ninth and Tenth Circuits view the release date as the Bureau of Prisons' prerogative.") (citing Asare v. United States Parole Comm'n, 2 F.3d 540 (4th Cir. 1993); Ajala v. United States Parole Comm'n, 997 F.2d 651, 655 (9th Cir. 1993); Trevina–Cesares v. United States Parole Comm'n, 992 F.2d 1068, 1073 (10th Cir. 1993)).

In Asare v. U.S. Parole Comm'n, for example, the Fourth Circuit concluded that the responsibility to determine a release date incorporating credits under section 4105 rested with the BOP. See Asare v. U.S. Parole Comm'n, 2 F.3d 540, 542 (4th Cir. 1993). The Fourth Circuit held that, because computation of the release date under section 4105(c)(1) was to be made under the procedures of section 3624(a), and responsibility for administration of good time credits under section 3624(a) is conferred on the BOP, it was therefore the BOP's responsibility to "establish[] a release date that takes good time credits into account." Id.; see also 18 U.S.C. § 4105.

The court finds the approach taken by the Fourth Circuit, and the majority of circuits to reach this question, persuasive, and concludes that responsibility for establishing a release date under section 4105 falls to the BOP. Thus, Frascarelli has properly challenged the BOP's computation of his final release date through a petition for habeas corpus pursuant to section 2241 of title 28 of the United States Code.[1]

---

[1] Williams acknowledged in her Response that, it is "the job of the BOP to determine [Frascarelli's] entitlement to credits in this case," Resp't Resp. at 7, and that BOP is therefore the correct respondent, see id. at 6 n.4.

B.  Exhaustion of Administrative Remedies

As noted above, see supra, at 3–4, prior to filing his Petition, Frascarelli pursued BOP's available administrative remedies.  He filed a request for relief with the Warden of the prison where he was incarcerated, and then filed successive appeals, first with the BOP Regional Director, and then with the BOP Central Office.  See Resp't Resp., Attach 9 (Doc. No. 7-10).  The court concludes that Frascarelli, as required, exhausted the available administrative remedies prior to filing his Petition.

C.  Merits of Frascarelli's Petition

Frascarelli seeks credit for "work performed in the Mexican prison system prior to his transfer to the [United States]."  See Petition at 10.  Frascarelli's argues that he is entitled to relief because terms of the Transfer Treaty require that the execution of his sentence be carried out according to the laws of the United States, and that under the laws of the United States, BOP was required to apply Frascarelli's labor credit to its sentence computation.  See id. at 11–12.  BOP argues in response, that Frascarelli was not entitled to labor credit because documentation submitted by Mexico as part of his transfer indicated that "Mexican authorities concluded that Petitioner was not entitled to labor credits because of the nature of his crime."  Resp't Resp. at 9.  BOP argues that, under the statutes implementing the Transfer Treaty, its "calculation of a foreign sentence is limited by the credit given by the transferring country."  Id.

Frascarelli argues that BOP's denial of labor credit rests on a finding that the documents he submitted as Exhibit 1 to his Petition "were not provided to the BOP at the time of transfer."  See Pet'r Reply at 3.  Frascarelli's argument misstates BOP's

reasoning for denying him labor credit. BOP did not deny Frascarelli's request for labor credit based on whether documentation proving the existence of labor hours was given to BOP at the time of transfer. Rather, as Williams' Response makes clear, BOP denied the labor credits based on the determination by the DSCC that the labor credits themselves had not been credited by Mexico at the time of transfer. See Resp't Resp., Attach. 8, at 3.

In its response to Frascarelli's administrative remedy requests, BOP stated that the DSCC had reviewed the documentation submitted by Frascarelli and the Mexican government. See id. at 3–4, 7, 10. BOP denied Frascarelli's appeals, concluding that Frascarelli was not entitled to labor credit under Mexican law because of the nature of his crime, despite the fact that he had maintained employment during his incarceration in Mexico. See id. at 7. In short, BOP did not dispute that Frascarelli worked the amount he claimed. Instead, BOP concluded, based on the documents before it, that Mexican federal authorities had determined that Frascarelli was not eligible to receive labor credit on his sentence for the hours he worked. Frascarelli's focus on the documents he submitted is therefore misplaced, insofar as he argues that BOP denied him credit for labor hours because documents supporting the existence of the credits were not submitted at the time of Frascarelli's transfer.

Williams argues that documents submitted by the Mexican government as part of Frascarelli's transfer show the government's conclusion that labor credits were not applicable to Frascarelli's sentence. In support of her argument, Williams relies on a document submitted as Attachment 2 to her Response. See Resp't Resp., Attach. 2

8

(Doc. 7-3). The parties dispute the nature of the document. Williams states that it is the "Judgment from the Mexican Court that sentenced [Frascarelli]." Resp't Resp. at 8. Frascarelli argues that the document is "simply part of a [Mexican] federal transfer packet . . . ." See Pet'r Reply at 2. It is undisputed, however, that the document originated from the Mexican government. It is also undisputed that document states that Frascarelli worked 690 labor days, but that "reduced days" did not apply to his sentence by virtue of his conduct "being a common law crime." See Respt. Resp., Attach. 2, at 12. Williams argues that this document proves that BOP was correct to deny Frascarelli labor credit. See Resp't Resp. at 9. Frascarelli responds that the document shows only that he was ineligible to receive "Mexican Federal Reduced Time because his charges represent[ed] a Common Law or State Crime." Pet'r Reply at 2 (quotations omitted).

Frascarelli further argues, notwithstanding BOP's conclusion that he was ineligible for labor credit based on this document, that the documents he submitted in support of his Petition "clearly and unequivocally express the intent of Mexico for these labor credits to be applied," and "clearly prove that the credits were earned at the time of his transfer." Pet'r Reply at 4. Frascarelli claims that the documents he cites were submitted by Mexican state penitentiaries to the BOP. See id. at 3–4. The documents are in Spanish. The court provided Frascarelli with additional time to submit certified English translations of the documents. See Order (Doc. No. 13). Frascarelli provided a translation of the documents. See Response to Order (Doc. No. 14). Frascarelli swore

9

under penalty of perjury that the translation was correct. Id. at 3.[2] The translated documents provide that Frascarelli took part in certain activities during his imprisonment in Mexico, including "physical fitness," "general cleaning," and "living quarters cleaning," id. at 3, 7. The documents note, 797 work days were "registered" for the period between November 30, 2009, and February 21, 2012, id. at 7, while 747 work days were "registered" for the period between February 21, 2012 and March 15, 2014, id. at 3. However, even assuming that the documents submitted by Frascarelli prove that he worked the number of hours he claims, and even assuming that the documents submitted by the Mexican government indicated only that Frascarelli was ineligible for Mexican federal labor credits, other documents upon which Frascarelli relies make clear that he would not be entitled to labor credit in any event.

In his Reply, Frascarelli argues that, the Prisoner Transfer Case Summary "clearly states under Mexican law, Frascarelli 'would be eligible for early release . . . with good conduct and work credits.'" Pet'r Reply at 4 (ellipsis in original); Frascarelli's quotation omits an important qualifier. The section of the Prisoner Transfer Case Summary on which Frascarelli relies provides, in full, that "Mr. Frascarelli would be eligible for early release after serving 2/3 of his sentence with good conduct and work credits." Resp't Resp., Attach 1 (Doc. No. 7-2), at 3. It is undisputed that Frascarelli had served less than two-thirds of his Mexican sentence at the time he was transferred from Mexico to the United States. Frascarelli's Mexican sentence length was 27 years

---

[2] It appears that the translation was carried out by Frascarelli, rather than by a certified translator.

and six months, or 330 months. Two-thirds of that sentence is 220 months. As part of its computation of his release date, BOP calculated the percentage of the Mexican term of incarceration that Frascarelli had served prior to transfer. BOP calculated, taking into account prior custody dating from the time of Frascarelli's arrest on November 22, 2009, that Frascarelli had served six years, four months, and 16 days, or 33.1 percent of his full term date at the time of transfer. See Petition, Ex. 2 (Doc. No. 1-3) at 3. This was significantly less than two-thirds, or 66.67 percent of his Mexican sentence.

As the court has noted, a prisoner transferred subject to a transfer treaty is only eligible for those credits on a sentence, which credits "<u>had been given</u> by the transferring state <u>at the time of transfer</u>." 18 U.S.C. § 4105(c)(1) (emphasis added). Because Frascarelli had not completed the requisite period of incarceration required to become eligible for early release or sentence reduction in Mexico, the labor credits he seeks had not "been given" by Mexico to him at the time of his transfer, within the meaning of section 4105.

Though the Second Circuit has not addressed this question, the Tenth Circuit addressed a similar set of facts in <u>Kass v. Reno</u>, 83 F.3d 1186 (10th Cir. 1996). The <u>Kass</u> court concluded that the transferred prisoner, Kass, was not entitled to habeas corpus relief. Kass, much like Frascarelli, argued that he was eligible for early release or sentence modification, based on credits he earned during incarceration in Mexico. <u>Id.</u> at 1189. Kass relied on letters submitted by officials at the Mexican prisons at which he was held, which stated that Kass "would have the possibility to attain . . . early release with partial reduction of sentence . . . [a]fter 8 years 2 months 12 days from

11

the date the sentence began to compute." Id. at 1191–92. At the time of his transfer, Kass had not yet served the requisite amount of time to be eligible for release in Mexico. In denying Kass' claim for sentence modification, the Tenth Circuit concluded that, even assuming that the documents Kass submitted "correctly state[ed] the law of the state of Jalisco, Mexico, they show[ed] only that Mr. Kass might have become eligible to receive certain work and good time credits against his sentence had he remained in Mexico, rather than volunteering for transfer to the United States. Id. at 1191. The Tenth Circuit concluded that, because United States, not the law of Jalisco, Mexico, governed the execution of Kass' sentence starting on the date of his transfer, "Kass forfeited the potential benefit he might have received under the law of Jalisco, Mexico, when he chose to transfer to the United States." Id. at 1192.

As noted above, see supra, at 10, it is undisputed that Frascarelli had served less than two-thirds of his Mexican sentence at the time he was transferred to the United States. As Frascarelli properly acknowledged, following his transfer, the laws of the United States applied to the execution of his sentence. See Petition at 11. Therefore, even assuming that Frascarelli might have become eligible for early release under Mexican law, after serving two-thirds of his sentence, he forfeited that potential benefit when he voluntarily agreed to transfer to the United States prior to satisfying the durational prerequisite. His Petition for Habeas Corpus, challenging the BOP's denial of labor credits for hours worked during incarceration in Mexico, is therefore denied.

## III. CONCLUSION

For the reasons stated above, Frascarelli's Petition for a Writ of Habeas Corpus (Doc. No. 1) is **DENIED**.  The court notes that Frascarelli may appeal this denial to the Court of Appeals.  "A federal prisoner seeking habeas relief under 28 U.S.C. § 2241 is not required to obtain a certificate of appealability to take an appeal, inasmuch as he is neither challenging detention arising out of process issued by a state court, nor proceeding under § 2255.  Hoffler v. Bezio, 726 F.3d 144, 152 (2d Cir. 2013) (citing Murphy v. United States, 199 F.3d 599, 601 n. 2 (2d Cir.1999)).

**SO ORDERED.**

Dated at New Haven, Connecticut, this 16th day of November, 2018.

/s/Janet C. Hall\
Janet C. Hall\
United States District Judge